UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| YEARBOOK PHOTOGRAPHY OF | ) | Case No. 10-22980 (RDD) |
| MAMARONECK, INC. | ) | |
| d/b/a Davis Studio, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**ORDER (I) AUTHORIZING THE SALE OF CERTAIN OF THE
DEBTOR'S ASSETS PURSUANT TO SECTION 363 OF THE
BANKRUPTCY CODE, FREE AND CLEAR OF ALL LIENS, CLAIMS
AND ENCUMBRANCES TO HERFF JONES, INC.; (II) AUTHORIZING
AND APPROVING THE TERMS OF THE DEBTOR'S ASSET PURCHASE
AGREEMENT AND RELATED AGREEMENTS WITH HERFF JONES, INC.
AND AUTHORIZING CONSUMMATION OF THE TRANSACTIONS
CONTEMPLATED THEREIN INCLUDING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN SPECIFIED EXECUTORY CONTRACTS
AND UNEXPIRED LEASES AND THE ASSUMPTION OF CERTAIN SPECIFIED
LIABILITIES; (III) AUTHORIZING THE REJECTION OF CERTAIN OTHER
EXECUTORY CONTRACTS AND UNEXPIRED LEASES
AND (IV) GRANTING RELATED RELIEF**

Yearbook Photography of Mamaroneck, Inc., d/b/a Davis Studio (the "Debtor"), having

filed on May 18, 2010, its *Motion Seeking Entry of: (I) Sale Procedures Order (A) Approving*

*Bidding Procedures, (B) Approving a Break Up Fee, (C) Approving the Form and Manner of*

*Notice, (D) Scheduling an Auction and Sale Hearing; and (II) Sale Approval Order (A)*

*Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens,*

*Claims, Interests and Encumbrances, (B) Authorizing the Assumption or Rejection of Executory*

*Contracts and Leases Based Upon Results of Auction Sale, (C) Granting the Successful Bidder*

*Good Faith Status, and (D) Granting Related Relief*, as thereafter amended (the "Sale Motion")[1],

---

[1]  Capitalized terms used but not defined herein have the meanings ascribed to them in the Asset Purchase Agreement (the "Purchase Agreement") by and between the Debtor and Herff Jones, Inc. ("Herff Jones"), dated as of May 17, 2010 (a copy of which is attached hereto as <u>Exhibit A</u>), the Sale Motion, or the Bidding

which sought, pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorization to sell certain of the Debtor's assets, assume and assign certain executory contracts and unexpired leases, and reject other executory contracts and unexpired leases (the "Transaction" or "Transactions"); and this Court having entered on May 18, 2010, its *Order Scheduling Hearing on Shortened Notice on Debtor's Motion Seeking Entry of Sale Procedures Order (A) Approving Bidding Procedures, (B) Approving a Break Up Fee, (C) Approving the Form and Manner of Notice, (D) Scheduling an Auction and Sale Hearing*, which Order scheduled the interim hearing for May 25, 2010, at 10:00 a.m. (Eastern time); and this Court having approved and entered at such hearing its Order (I) Approving Bidding Procedures, (II) Approving Break Up Fee, (III) Approving the Form and Manner of Notice, and (IV) Scheduling an Auction and Sale Confirmation Hearing (the "Bidding Procedures Order"), approving, among other things, the Bidding Procedures with respect to, and notice of, the Transactions; and the Auction having been conducted on June 17, 2010 in all material respects in accordance with the Bidding Procedures Order; and the Debtor, having determined that Herff Jones, Inc. ("Herff Jones") has submitted the highest or otherwise best bid for a portion of assets identified in the Bidding Procedures Order, in the Bidding Procedures and in this Order as the "Track 1" Assets (the "Selected Track 1 Assets") and has also submitted the highest and best bid for the "Track 2 Assets" (with the "Selected Track 1 Assets, the "Assets") sold at the Auction; and Herff Jones having been designated as the winning bidder for the Assets pursuant to the Bidding Procedures Order; and a hearing having been held on June 21, 2010 before this Court (the "Sale Hearing") to consider approval of the sale of the Selected Track 1 Assets as identified in Herff Jones' written bid dated June 14, 2010 (the "Herff Jones Qualified

Procedures Order, as the case may be, in that order of priority, unless the context clearly requires otherwise.

Bid") and all Track 2 Assets to Herff Jones pursuant to the terms and conditions of the Purchase Agreement; and adequate and sufficient notice of the Bidding Procedures, the Purchase Agreement, the Transactions and the Sale Hearing having been given to parties in interest in these cases; and such parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief requested therein; and the Court having reviewed and considered: (i) the Sale Motion and (ii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and there being no objections to the requested relief; and after due deliberation thereon, and good and sufficient cause appearing therefor, and it appearing that the relief requested in the Sale Motion, insofar as it pertains to this Order, is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and the Court, being fully advised in the premises,

**IT HEREBY IS FOUND AND DETERMINED THAT**:[2]

A.    This Court has jurisdiction over the Sale Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of this Chapter 11 case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory bases for the relief sought in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, together with Bankruptcy Rules 2002, 6004, 6006, and 9014.

C.    As evidenced by the proofs of service on file with this Court:  (i) due, proper, timely, adequate, and sufficient notice and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, the Sale Hearing, the Transactions,

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

and the Auction, have been provided in accordance with Bankruptcy Code sections 102(1), 105(a), 363, and 365 and Bankruptcy Rules 2002, 6004, 6006, and 9014, and in compliance with the Bidding Procedures and the Purchase Agreement and have been afforded to all creditors and other parties in interest, including, but not limited to (a) the Office of the United States Trustee; (b) Herff Jones and its counsel; (c) all entities known to Debtor that assert any Liens against or other interests in the Track 1 Assets and/or the Track 2 Assets (or any portion thereof); (d) all parties known to the Debtor who expressed in writing to the Debtor an interest in purchasing all or a portion of the Track 1 Assets or the Track 2 Assets; (e) all non-Debtor parties to any executory contracts and unexpired leases to which the Debtor is a party; (f) all relevant taxing and regulatory authorities; and (g) all entities that filed a notice of appearance and request for service of papers in this Chapter 11 case in accordance with Bankruptcy Rule 2002; (ii) such notice was good, sufficient, and appropriate under the circumstances; and (iii) no other or further notice of the Sale Motion, the Sale Hearing, the Transactions, the Bidding Procedures, the Sale Notice, or the Auction is or shall be required.

D.      As demonstrated by the testimony proffered or adduced at the Sale Hearing, the Debtor has marketed the Track 1 Assets and the Track 2 Assets and conducted the sale process in compliance in all material respects with the Bid Procedures Order.

E.      No consents or approvals are required for Debtor to consummate the Transactions other than the consent and approval of this Court and those set forth in the Purchase Agreement and the Herff Jones Qualified Bid.   Neither the execution of the Purchase Agreement, the Debtor's acceptance of the Herff Jones Qualified Bid nor the consummation of the Transactions in accordance with their terms will constitute a violation of any provision of Debtor's

organizational documents or any other instrument, law, regulation, or ordinance by which Debtor is bound.

F.      The bidding and related procedures established by the Bidding Procedures Order have been complied with in all material respects by the Debtor and Herff Jones.  The Debtor conducted an Auction for the Track 1 Assets and the Track 2 Assets in compliance with the Bidding Procedures Order, and the Debtor has selected Herff Jones as the Winning Bidder for the Selected Track 1 Assets and the Track 2 Assets.

G.      The Debtor is the legal and equitable owner of the Selected Track 1 Assets and the Track 2 Assets and, upon entry of this Sale Order, Debtor shall have full authority to consummate the Transactions contemplated by the Purchase Agreement and the Herff Jones Qualified Bid.  The Purchase Agreement, the Herff Jones Qualified Bid and the Transactions have been duly and validly authorized by all necessary corporate action of Debtor.

H.      Approval of the Purchase Agreement, the Herff Jones Qualified Bid and consummation of the Transactions is in the best interests of Debtor, the estate, creditors, and other parties in interest.  The Debtor has demonstrated (i) good, sufficient, and sound business purpose and justification, and (ii) compelling circumstances for the sale of the Selected Track 1 Assets and the Track 2 Assets pursuant to section 363(b) of the Bankruptcy Code prior to, in contemplation of, and outside of, a plan of reorganization.

I.      The Debtor, with the assistance of its professionals, diligently and in good faith marketed the Track 1 Assets and the Track 2 Assets to secure the highest and best offer therefor by, among other things, making its books and records, the Track 1 Assets and the Track 2 Assets, and documents pertaining to the aforesaid Assets available to potential buyers for due diligence and providing potential buyers access to management.  In addition, the Debtor served the Bid

Procedures Order, the Sale Motion, and the draft of the purchase agreement to all entities that had previously expressed an interest in the Track 1 Assets and/or the Track 2 Assets.

J.     The procedures set forth in the Bidding Procedures Order, including the Auction, were designed to achieve and achieved a fair and reasonable purchase price constituting the highest and best offer obtainable for the Selected Track 1 Assets and the Track 2 Assets.

K.     A sale of the Selected Track 1 Assets and the Track 2 Assets at this time pursuant to Section 363(b) of the Bankruptcy Code will preserve the existing value of the Assets and will maximize the Debtor's estate for the benefit of all constituencies.

L.     The Purchase Agreement was negotiated, proposed, and entered into by Debtor and Herff Jones without collusion, in good faith, and from arms' length bargaining positions. Herff Jones is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  Any relevant connections or relationships between any of the Debtor, Herff Jones, and any parties that have, to the Debtor's knowledge, considered participating in the Auction or otherwise expressed interest in acquiring the assets of the Debtor have been disclosed, and the Debtor and Herff Jones have not engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.

M.     Herff Jones is in all respects a good faith purchaser of the Selected Track 1 Assets and the Track 2 Assets under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  Herff Jones will be acting in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in consummating the Transactions evidenced by the Purchase Agreement and the Herff Jones Qualified Bid.

N.     The consideration to be provided by Herff Jones pursuant to the Purchase Agreement and the Herff Jones Qualified Bid (i) is fair and reasonable; (ii) is the highest or

otherwise best offer for the Selected Track 1 Assets and the Track 2 Assets; (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

O.    The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.

P.    The proposed transfer of the Selected Track 1 Assets and the Track 2 Assets to Herff Jones will be a legal, valid, and effective transfer of the those assets, and, except as may be expressly provided in the Purchase Agreement and the Herff Jones Qualified Bid, will vest Herff Jones with all right, title, and interest of the Debtor to the Selected Track 1 Assets and the Track 2 Assets free and clear of all Liens, claims, encumbrances, and interests of any kind (collectively from time to time herein "Interests"), including, without limitation, the following (i) interests that purport to give to any party or entity a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's or Herff Jones' interest in the Selected Track 1 Assets or the Track 2 Assets, or any similar rights; (ii) interests relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Debtor's business prior to the Closing Date; and (iii) interests relating to Liens, claims, and encumbrances on the Selected Track 1 Assets, the Track 2 Assets or against the Debtor; provided, however, that all such Interests shall attach to the proceeds of the Auction sale, with the same validity and enforceability and in the same order of priority as they had immediately before the closing on the Transactions.

Q.     Herff Jones would not have entered into the Purchase Agreement or submitted the Herff Jones Qualified Bid and would not consummate the Transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Selected Track 1 Assets and the Track 2 Assets to Herff Jones and the assignment of the assumed executory contracts and unexpired leases to Herff Jones were not free and clear of all Liens and Interests of any kind or nature whatsoever, or if Herff Jones would, or in the future could, be liable for any of the Liens or Interests not expressly assumed by Herff Jones.

R.     Subject to the provisions of this Order, the Debtor is authorized and is ordered to sell and otherwise transfer the Selected Track 1 Assets and the Track 2 Assets free and clear of all Liens and other Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied.  Those (i) holders of Interests; and (ii) non-debtor parties to "Assumed and Assigned Contracts and Leases" (as that term is defined below) who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code and all (i) holders of Interests and (ii) non-debtor parties to "Assumed and Assigned Contracts and Leases" (as that term is defined below) are adequately protected by having their Interests, if any, attach to the proceeds of the Auction sale attributable to the property against or in which they claim Interests.

S.     The (i) transfer of the Selected Track 1 Assets and the Track 2 Assets to Herff Jones and (ii) assumption and assignment to Herff Jones of the executory contracts and unexpired leases identified herein (the "Assumed and Assigned Contracts and Leases") will not deem or cause Herff Jones to be a "successor" or subject Herff Jones to any liability whatsoever with respect to, or on account of, the operation of the Debtor's business and related activities and

operations prior to the Closing Date or by reason of such transfer under any applicable laws, whether based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of implied assumption of any liabilities (with the exception of the liabilities specifically assumed in the Purchase Agreement), any theory of constructive consolidation or merger of Herff Jones and the Debtor, any theory that Herff Jones' acquisition is a mere continuation or reincarnation of the Debtor's business, any theory that the Transactions are fraudulent or lack good faith, or any other theory of antitrust, vicarious, successor, or transferee liability.

T.        The Debtor has demonstrated that it has exercised sound business judgment to enter into the Transactions, consummate the sales described herein, and assume and assign the Assumed and Assigned Contracts and Leases to Herff Jones in connection with the consummation of the sales described herein, and the assumption and assignment of the Assumed and Assigned Contracts and Leases is in the best interests of the Debtor, its estate, and its creditors.  The Assumed and Assigned Contracts and Leases being assumed and assigned to Herff Jones herein are an integral part of the Assets being purchased by Herff Jones and, accordingly, such assumption and assignment of the Assumed and Assigned Contracts and Leases are reasonable, enhance the value of the Debtor's estate, and do not constitute unfair discrimination.

U.        The consummation of the Transactions pursuant to the Purchase Agreement and the Herff Jones Qualified Bid (the "Closing") will be a legal, valid, and effective transfer of the Selected Track 1 Assets and the Track 2 Assets to Herff Jones, and will vest Herff Jones with all right, title, and interest in and to the Selected Track 1 Assets and the Track 2 Assets and assignment of the Assumed and Assigned Contracts and Leases, free and clear of all Liens (as

such term is defined in the Purchase Agreement) and Interests in accordance with section 363(f) of the Bankruptcy Code.

V.      The Purchase Agreement is a valid and binding contract between the Debtor and Herff Jones that is and shall be enforceable according to its terms.

W.      All of the provisions of the Purchase Agreement are non-severable and mutually dependent.

X.      Notice of the Sale Motion has been provided to each non-debtor party to the Assumed and Assigned Contracts and Leases, together with a statement from the Debtor with respect to the amount, if any, to be paid by the Debtor to such non-debtor party to cure any defaults under, and to otherwise comply with the requirements of, section 365(b) of the Bankruptcy Code with respect to the Assumed and Assigned Contracts and Leases to which such non-debtor is party (the "Cure Amounts").  As to each Assumed and Assigned Contract and Lease, payment of the Cure Amount as determined in accordance with the procedures provided in the Bidding Procedures Order will be sufficient for Debtor to comply fully with the requirements of section 365(b) of the Bankruptcy Code.

Y.      Herff Jones has provided adequate assurance of its ability to perform its obligations under each of the Assumed and Assigned Contracts and Leases within the meaning of section 365(f) of the Bankruptcy Code.

**NOW, THEREFORE IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Sale Motion is **GRANTED** and approved in all respects (other than with respect to matters already addressed by the Bidding Procedures Order).

**APPROVAL OF THE PURCHASE AGREEMENT,**
**TRANSACTION AND ANCILLARY AGREEMENTS**

2.      The Purchase Agreement and all of the terms and conditions thereof, and the Transactions contemplated thereby, are hereby approved.

3.      Pursuant to Bankruptcy Code sections 363(b) and (f) and 365(b), the Debtor is authorized, empowered, and, subject to the terms of the Purchase Agreement and this Sale Order, directed to execute, deliver, and perform under, consummate, and implement the Purchase Agreement, together with all additional instruments and documents that are requested by Herff Jones and may be reasonably necessary or desirable to implement the Purchase Agreement, and to take any and all actions as it deems necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to Herff Jones or reducing to possession, the Track 2 Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement, including, without limitation, any and all actions reasonably requested by Herff Jones which are consistent with the Purchase Agreement.

4.      Pursuant to sections 105(a), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing (i) the transfer of the Selected Track 1 Assets and Track 2 Assets to Herff Jones pursuant to the Purchase Agreement and the Herff Jones Qualified Bid shall constitute a legal, valid, and effective transfer of the Assets and shall vest Herff Jones with all right, title, and interest in and to the Assets; (ii) the Selected Track 1 Assets and the Track 2 Assets shall be transferred to Herff Jones free and clear of all Liens and Interests against such Assets, in accordance with section 363(f) of the Bankruptcy Code, with any such Liens or Interests to attach to the net proceeds of the Transactions, in the order of their priority and with the same validity, force, and effect which they had against the Selected Track 1 Assets and the Track 2

11

Assets prior to the Closing, subject to any rights, claims, and defenses Debtor and all interested parties may possess with respect thereto; and (iii) each of the Assumed and Assigned Contracts and Leases shall be deemed assumed by the Debtor and assigned to Herff Jones on the Closing Date as provided in and contemplated, and required by, the Purchase Agreement and the Herff Jones Qualified Bid. Without limiting the generality of the preceding sentences, the transfer of the Selected Track 1 Assets and the Track 2 Assets shall be free and clear of all Liens and Interests of any government or governmental or regulatory body thereof, or political subdivision thereof, whether foreign, federal, state, or local, or any agency, instrumentality or authority thereof, or any court or arbiter (public or private).

5. This Sale Order is and shall be effective as a determination that JP Morgan Chase Bank, N.A. ("Chase") asserts duly perfected first priority liens and security interests in and upon the Selected Track 1 and Track 2 Assets and all proceeds thereof, subject to the terms of the Final Order Authorizing the Debtor's Use of Cash Collateral, dated June 21, 2010 (the "Cash Collateral Order"), and that, without limiting the effect of the preceding decretal paragraph, upon delivery of the consideration for the Selected Track 1 Assets and Track 2 Assets to Chase constituting Chase's collateral and the Closing of the sale pursuant to the terms hereof, all Liens and Interests of Chase shall be and are, without further action by any person or entity, released with respect to the Selected Track 1 Assets and the Track 2 Assets as of Closing.

6. Except as expressly permitted or otherwise specifically provided by the Purchase Agreement, the Herff Jones Qualified Bid or this Sale Order, to the greatest extent possible with the requirements of due process, and provided further that the Closing shall have occurred, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, customers, users,

warranty claimants, and trade and other creditors, holding Liens or Interests of any kind or nature whatsoever in the Debtor, the Selected Track 1 Assets, the Track 2 Assets or the Assumed and Assigned Contracts and Leases (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Selected Track 1 Assets, the Track 2 Assets or the Assumed and Assigned Contracts and Leases, or the transfer of the Selected Track 1 Assets, the Track 2 Assets or the Assumed and Assigned Contracts and Leases to Herff Jones, hereby are forever barred, estopped, and permanently enjoined from asserting against Herff Jones, its parents, affiliates, or subsidiaries, its successors or assigns, its property, or the Selected Track 1 Assets, the Track 2 Assets or the Assumed and Assigned Contracts and Leases, such persons' or entities' Liens, claims, or Interests, pursuant to any legal or equitable theory whatsoever, including, without limitation, that (a) Herff Jones is deemed to be a "successor" to the Debtor for any purpose, (b) Herff Jones is deemed to have, de facto or otherwise, merged with or into the Debtor; or (c) that Herff Jones is deemed to be a continuation of the Debtor.

7.      To the greatest extent allowed by applicable law, except as expressly provided in the Purchase Agreement and the Herff Jones Qualified Bid, Herff Jones is not assuming nor shall it, in any way whatsoever, be or be deemed to be liable or responsible, as successor or otherwise, for any Liabilities of the Debtor, or any Liabilities in any way whatsoever relating to or arising from the Debtor's assets, business, or operations, or by virtue of the conveyance of the Selected Track 1 Assets, the Track 2 Assets or the Assumed and Assigned Contracts and Leases to Herff Jones.

## ASSUMPTION AND ASSIGNMENT OF SPECIFIED
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.      The Assumed and Assigned Contracts and Leases consist of only the following: (i) the "Assumed Contracts" as defined and specified in the Purchase Agreement as to be assumed by the Debtor and assigned to Herff Jones at the Closing; (ii) a certain lease of nonresidential real estate located at 4355 Hylan Boulevard, Staten Island, Richmond County, New York between the Debtor, as tenant, and 4349 Holdings, LP ("Holdings"), as landlord, which lease is dated June 1, 2008; (iii) a certain equipment lease dated May 10, 2007, between Debtor, as lessee, and Konica Minolta Business Solutions U.S.A., Inc., as lessor ("Konica"); and (iv) an equipment lease dated August 1, 2009, between Debtor as lessee, and Pitney Bowes Global Financial Solutions, , LLC, as lessor.  Herff Jones shall be responsible for curing all allowed pre-petition monetary and non-monetary defaults relating to the Assumed and Assigned Contracts and Leases.  Pursuant to Section 365 of the Bankruptcy Code, Debtor is authorized to assume at closing the Assumed and Assigned Contracts and Leases designated in the Purchase Agreement and otherwise identified herein, cure the same (in the Cure Amounts set forth in the notice relating to such contracts or by further order of the Court) and assign the same to Herff Jones.

9.      Herff Jones shall, at or upon Closing, pay directly to Holdings either (a) the sum of $8,474.11 in the event the sale closes on or before June 30, 201, or (b) the sum of $11,822.40 in the event the sale closes on or after July 1, 2010, representing the allowed cure amount due to Holdings under section 365(b)(1)(A) of the Bankruptcy Code.

10.      The Assumed and Assigned Contracts and Leases, consistent with the provisions contained herein, shall be transferred to, and remain in full force and effect for the benefit of, Herff Jones in accordance with their respective terms, notwithstanding any provision

in any such Assumed and Assigned Contracts and Leases (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, and, pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assumed and Assigned Contracts and Leases after such assumption and assignment to Herff Jones.

11.     All defaults or other obligations of the Debtor under the Assumed and Assigned Contracts and Leases arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured, subject to the satisfaction of the provisions of Paragraphs 8-9 (relating to payment of the applicable Cure Amounts), above, and Herff Jones shall have no liability or obligation arising or accruing under the Assumed and Assigned Contracts and Leases prior to the Closing Date, except as otherwise expressly provided in the Purchase Agreement.

12.     Provided that Herff Jones pays the applicable Cure Amount, each non-debtor party to the Assumed and Assigned Contracts and Leases is forever barred, estopped, and permanently enjoined from asserting against Herff Jones, the Selected Track 1 Assets or the Track 2 Assets, any default existing as of the Closing Date or any counterclaim, defense, setoff, or any other claim asserted or assertable against the Debtor as of the Closing Date.

13.     The failure of the Debtor or Herff Jones to enforce at any time one or more terms or conditions of any Assumed and Assigned Contracts and Leases shall not be a waiver of such terms or conditions or of the Debtor's and Herff Jones's rights to enforce every term and condition of the Assumed and Assigned Contracts and Leases.

## REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND BAR DATE FOR REJECTION CLAIMS

14.     All executory contracts and unexpired leases not expressly assumed and assigned herein to Herff Jones (that is, all executory contracts and unexpired leases not classified as Assumed and Assigned Contracts and Leases), which contracts and leases include (i) a certain lease of nonresidential real property located at 155 White Plains Road, Tarrytown, Westchester County, New York (the "Tarrytown Lease"), between the Debtor, as lessee, and Crescent Associates, LLC, as lessor ("Crescent"); and (ii) a certain equipment lease dated October 30, 2007, between the Debtor, as lessee, and Konica, as lessor, are hereby rejected pursuant to the applicable provisions of section 365 of the Federal Bankruptcy Code, such rejections to be effective as of June 30, 2010.

15.     **All nondebtor parties to the executory contracts and unexpired leases rejected herein shall file with the Bankruptcy Court its rejection claim under Section 502(b)(6) of the Bankruptcy Code on or before 35 days after notice of the entry of the Order.  Failure to file such claim on or before such deadline shall automatically result in the bar, waiver, release and/or expungement of any such rejection claim that may have been asserted by Crescent against the Debtor arising from the rejection of the Tarrytown Lease granted herein**.

## CLOSING OF TRANSACTIONS

16.     The Closing of the sale of the Selected Track 1 Assets and the Track 2 Assets and the assumption and assignment of the Assumed and Assigned Contracts and Leases shall occur pursuant to the terms of the applicable provisions of Article 2 and any other provisions of the Purchase Agreement, including (and subject to satisfaction or express waiver of) the conditions precedent to Closing identified therein.  In the event that the Closing of the

sale of the Track 2 Assets is not consummated due to failure of such a condition precedent or breach by Debtor, then neither the sale of the Selected Track 1 Assets nor the assumption and assignment of the Assumed and Assigned Contracts and Leases shall take place, the parties being excused from performing any obligations they may have pursuant to the Purchase Agreement, the Qualified Bid and/or this Order.

17.    At Closing, Debtor shall deliver to Purchaser a Bill of Sale and Assignment and Assumption Agreement and other appropriate conveyance instruments, closing certificates and deliveries pursuant to the authorization set forth in this Order.

18.    At Closing, Debtor's counsel is authorized and directed to turn over all cash proceeds from the sale of the Selected Track 1 Assets and Track 2 Assets to Chase, less the Carve-Out as defined in the Final Cash Collateral Order, on account of Chase's first priority lien upon and security interest in the Selected Track 1 Assets and Track 2 Assets, subject to the terms and conditions of the Cash Collateral Order.

19.    Chase is hereby authorized and directed to apply such proceeds to pay in part the principal amount of the Pre Petition Debt due to Chase by the Debtor, as provided in and subject to the terms and conditions of the Cash Collateral Order.

20.    Herff Jones shall be responsible for the prompt and direct turnover to Chase of all proceeds of the Excluded Assets as defined in the Purchase Agreement to the extent the same shall come into Herff Jones' possession (which Excluded Assets include but are not limited to Debtor's cash on hand, all trade accounts receivable and other contractual rights to payment representing amounts receivable in respect of goods shipped or products sold or services rendered to customers of Debtor on or prior to the Closing Date (regardless whether

such payments are received before or after Closing)), if any, which proceeds are subject to the terms and conditions of the Cash Collateral Order.

## ADDITIONAL PROVISIONS

21.    The consideration provided by Herff Jones for the Selected Track 1 Assets and the Track 2 Assets under the Purchase Agreement is fair and reasonable and may not be avoided under Bankruptcy Code section 363(n).

22.    The Transactions have been, and are undertaken by the Debtor and Herff Jones in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transactions shall not affect the validity of the sale of the Selected Track 1 Assets or the Track 2 Assets to Herff Jones, unless such authorization is duly stayed pending such appeal.  Herff Jones is in all respects a good-faith purchaser of the Selected Track 1 Assets and the Track 2 Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.  In the event of any stay, modification, reversal or vacation of this Order, then, notwithstanding any such stay, modification, reversal or vacatur, all obligations incurred by the Debtor under this Order, the Purchase Agreement and the Herff Jones Qualified Bid prior to the effective date of such stay, modification, reversal or vacatur will be governed in all respects by the original provisions of this Order, and Herff Jones shall be entitled to the rights, privileges and benefits granted in this Order with respect to all such obligations.

23.    This Court retains jurisdiction to:

(a)    Interpret, implement, and enforce the terms and provisions of this Order, the terms of the Purchase Agreement, the Herff Jones Qualified Bid all amendments thereto, and any waivers and consents thereunder, and of each of the

agreements executed in connection therewith to which Debtor is a party or which has been assigned by Debtor to Herff Jones;

(b)     Protect Herff Jones or any of the Assumed and Assigned Contracts and Leases and/or the Selected Track 1 Assets and the Track 2 Assets against any of the Liens or Interests as provided herein, and to enforce the injunctions provided herein with respect to the commencement or continuation of any action seeking to impose successor or other liability upon Herff Jones;

(c)     Enter orders in aid or furtherance of the Sale and the Transactions;

(d)     Compel delivery of all Selected Track 1 Assets and the Track 2 Assets to Herff Jones;

(e)     Adjudicate any and all remaining issues, if any, concerning Debtor's right and authority to assume and assign the Assumed and Assigned Contracts and Leases and the rights and obligations of Herff Jones with respect to such assignment and the existence of any default (including any Cure Amounts) under any such Assumed and Assigned Contracts and Leases;

(f)     Adjudicate all issues concerning any actual or alleged Liens or Interests in and to the Selected Track 1 Assets and the Track 2 Assets, including the extent, validity, enforceability, priority, and nature of all such actual or alleged Liens or Interests; and

(g)     Except as expressly provided for herein, adjudicate any and all issues and/or disputes relating to Debtor and title or interest in the Selected Track 1 Assets and the Track 2 Assets and the proceeds of the Sale, the Sale Motion, or the Purchase Agreement, and/or the Herff Jones Qualified Bid.

24. Provided that the terms of this Sale Order are complied with, this Sale Order (a) shall be effective as a determination that, on the Closing Date, all Liens and Interests of any kind or nature whatsoever existing as to the Selected Track 1 Assets and the Track 2 Assets prior to the Closing have been unconditionally released, discharged, and terminated as to the Assets and the Assumed and Assigned Contracts and Leases, with such Liens and Interests to attach to the proceeds of such Sale as provided herein, and that the conveyances described herein have been effected; and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record, or release any documents or instruments, or who maybe required to report or insure any title or state of title in or to any of the Selected Track 1 Assets, the Track 2 Assets and the Assumed and Assigned Contracts and Leases.

25. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Purchase Agreement, the Herff Jones Qualified Bid and this Order.

26. All persons who or entities that are presently, or on the Closing Date may be, in possession of some or all of the Selected Track 1 Assets and the Track 2 Assets are hereby directed to surrender possession of such assets to Herff Jones on the Closing Date.

27. Herff Jones shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Selected Track 1 Assets and the

Track 2 Assets other than the "Assumed Liabilities" as specified and defined in the Purchase Agreement. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Purchase Agreement, Herff Jones shall not be liable for any claims against the Debtor or any of its predecessors or affiliates, except as expressly set forth in the Purchase Agreement as an assumed liability, and Herff Jones shall have no successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or, in any way, relating to the operation or transfer of the Debtor's business or assets prior to the Closing Date, or obligations in any way relating to collective bargaining agreements between the Debtor and any party, or any other obligations relating to current or former employees (other than the "Assumed Liabilities" as specified and defined in the Purchase Agreement), or retirees of the Debtor. The sale of the Selected Track 1 Assets and the Track 2 Assets pursuant to the Purchase Agreement and the Herff Jones Qualified Bid and this Order shall not give rise to any claims for severance against, or trigger any other employee benefit not otherwise payable in the ordinary course by the Debtor to any employee of the Debtor whose employment is continued by Herff Jones after the Closing Date.

28.     If any person or entity that has financing statements, mortgages, mechanics' liens, *lis pendens*, or other documents or agreements evidencing Liens or Interests against the Selected Track 1 Assets, the Track 2 Assets and/or the Assumed and Assigned Contracts and Leases shall not have delivered to Debtor and Herff Jones, prior to Closing, in proper form for filing and executed by the appropriate parties, releases of all such Liens or

Interests which the person or entity has with respect to the Selected Track 1 Assets and the Track 2 Assets, then, upon the delivery of the purchase price for the Selected Track 1 Assets and the Track 2 Assets to Chase (net of the Carve Out) as required herein, (i) the Debtor or Herff Jones is authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Selected Track 1 Assets and the Track 2 Assets; and (ii) Herff Jones is authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens or other Interests in the Selected Track 1 Assets, the Track 2 Assets and the Assumed and Assigned Contracts and Leases as of Closing, of any kind or nature whatsoever.

29. The terms and provisions of the Purchase Agreement, the Herff Jones Qualified Bid, the ancillary agreements, and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of Debtor, Herff Jones and their respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code or conversion of this case to a case under chapter 7, as to which trustee(s) such terms and provisions likewise shall be binding. The Purchase Agreement, the Herff Jones Qualified Bid and the Transactions may be specifically enforced against, and shall not be subject to rejection or avoidance by, Debtor or any Chapter 7 or Chapter 11 Trustee of Debtor.

30. The Purchase Agreement, the Herff Jones Qualified Bid and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof,

without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on Debtor or Debtor's estate.

31.     The failure specifically to include any particular provisions of the Purchase Agreement, the Herff Jones Qualified Bid or the ancillary agreements in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement, the Herff Jones Qualified Bid and the ancillary agreements be authorized and approved in their entirety.

32.     To the extent of any inconsistency between the provisions of this Sale Order, the Purchase Agreement, the Herff Jones Qualified Bid, and any documents executed in connection therewith, the provisions contained in the Sale Order and the Purchase Agreement, the Herff Jones Qualified Bid and any documents executed or delivered in connection therewith shall govern, in that order.

33.     Nothing contained in any Chapter 11 plan confirmed in this Chapter 11 case or any Order of this Court confirming such plan or any other order entered in this Chapter 11 case (or any converted Chapter 7 case) shall conflict with or derogate from the provisions of the Purchase Agreement and/or the Herff Jones Qualified Bid to the extent modified by this Order, or the terms of this Order.

34.     In the event that this Chapter 11 case is dismissed or converted to a Chapter 7 case, or a trustee is appointed (whether under Chapter 11 or 7), neither the dismissal or conversion of this case, nor the appointment of such a trustee, shall affect in any manner the rights of Herff Jones under the Purchase Agreement, the Herff Jones Qualified Bid, or this Sale Order or any other agreements executed by Debtor in conjunction with the Sale and the Transactions, and all of the rights and remedies of Herff Jones under this Sale Order and such

agreements shall remain in full force and effect as if the case had not been dismissed or converted or a trustee had not been appointed.

35.     The provisions of this Sale Order are non-severable and mutually dependent.

36.     This Order shall take immediate effect and the 10-day appeal period provided by Fed. R. Bankr. P. 6004(g) and 6006(d) shall not apply so that the sale may close immediately.

Dated:  White Plains, New York
        June 21, 2010

                                    /s/Robert D. Drain
                                    United States Bankruptcy Judge